BEFORE THE SECOND DIVISION, JULY 28, 1954

No. 58295.—Rohner, Gehrig & Co. v. United States, protest 179610–K (New York).

LAWRENCE, Judge:   Certain imported merchandise described on the invoice as "Light Metal Staves" was assessed for duty by the collector of customs at 40 per centum ad valorem pursuant to the following provision in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372)—

* * * all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * * *Provided*, That parts, not specially provided for, wholly or in chief value of metal * * * of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *

It appears that at the time of importation of the merchandise above referred to the 40 per centum rate in paragraph 372, *supra*, had been reduced by various trade agreements on certain types of textile machinery, but not as to looms.

Plaintiff protested the classification and assessment and claims that the merchandise is properly dutiable at 22½ per centum ad valorem in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), which, insofar as pertinent here, reads as follows:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*          *          *          *          *          *          *

Composed wholly or in chief value of * * * aluminum * * * but not plated with platinum, gold, or silver, or colored with gold lacquer:

*          *          *          *          *          *          *

Other (except slide fasteners and parts thereof)___ 22½% ad val.

The imported merchandise is represented by plaintiff's illustrative exhibit 1 except that, as imported, it was in 90, 100, and 112-inch lengths.   The record discloses that illustrative exhibit 1 is in chief value of aluminum, not plated, and is in the form of a hollow strip or bar of aluminum, approximately 2¼ inches wide and three-eighths of an inch thick, with flanges on each edge.

Clayton E. Schmidt, treasurer of the Grob Corp., for whose account the merchandise was imported, and who is sales manager of Schmidt Manufacturing Co., acting as sales agent for the Grob Corp., testified to his personal familiarity with the character and use of the imported commodity and with textile equipment generally.   He explained in detail the use of the article and the manufacture of

harness frames for textile looms. He defined a harness frame as "the frame which holds the heddles, through which the warp threads are passed in a textile loom," and that "a complete harness with heddles is part of a textile frame."

Schmidt produced a sales sample of a harness frame, complete with heddles, which he stated was identical with an actual frame, except that it was shorter. It was received in evidence as plaintiff's illustrative exhibit 2.

Being familiar with the manufacture and process employed in making harness frames from the imported material, Schmidt testified that the subject merchandise is used in forming the top and bottom of a harness frame, illustrated by exhibit 2; that the material was never imported in exactly the lengths to meet the needs of his customers, since frame lengths vary according to requirements; for instance, 77⅝, 34¾. 48⅛, 70⅜ inches, and many others; that harness frames must be made to exact length, with a tolerance of only ⅟₃₂nd of an inch plus or minus; and that these so-called staves were never used in conjunction with textile manufacture, without further manipulation.

After importation, the staves are cut to the exact length desired for their ultimate use, drilled, countersunk, riveted to wooden pieces to form a frame, and then "the edges and the heddle bars added to it and the slide hooks." Later, the heddles are attached.

It seems clear from the evidence that the material, as imported, is not dedicated to any particular loom or part thereof and, hence, cannot be properly regarded as a "part" of textile machinery.

No evidence was introduced on behalf of defendant and it has informed the court that "upon consideration of the record made and the brief filed by counsel for the plaintiff," it does not desire to file a brief.

Upon the undisputed facts of record, plaintiff contends that the case is controlled by the decisions of our appellate court in *United States* v. *The Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830, and *The Harding Co. et al.* v. *United States*, 23 C. C. P. A. (Customs) 250, T. D. 48109. Those cases related to asbestos material imported in lengths of 100 feet or more intended for ultimate use, after being cut to fit the particular brake shoe desired, in making brake linings for automobiles. The appellate court was of the opinion that since the long rolls of brake lining material in the condition as imported have not been dedicated to the making of any particular brake lining, it could not be properly regarded as "parts" of automobiles.

Applying the reasoning adopted by the court in the *Harding* cases, *supra*, we find and hold that the light metal staves in controversy were not at the time of importation so far advanced as to properly be regarded as parts of looms or any other textile machinery but are material for use in the manufacture of articles which may ultimately become such parts.

Our attention not having been invited to any other more specific provision, we find and hold that the importation in controversy is properly dutiable at the rate of 22½ per centum ad valorem pursuant to the terms of paragraph 397, as modified, *supra*, as claimed by plaintiff. The protest is sustained to that extent, and judgment will issue accordingly.